BETSEY CALDWELL, ET AL., *v.* MARSH CALDWELL, ET AL.

**Suit to Set Aside Conveyances of Real Estate—Joint Suit—Waiver.**
Where two conveyances are made at different times to different persons for separate tracts of ground, there should be separate suits to set them aside; but since the statute, Civ. Code, § 114, provides that unless objection is made in the court, the error in improperly joining two actions in one is, waived, no objection having been made in the court below none can be made in the court of appeals.

APPEAL FROM FAYETTE CIRCUIT COURT.

March 13, 1875.

OPINION BY JUDGE PETERS:

This suit in equity was brought by appellees, the widow and the only child and heir of William Caldwell, deceased, against appellants and Robert Caldwell, to set aside two deeds made by said decedent a short time before his death, the one to appellants, who were his mother and sister, and the other to Robert Caldwell, who was his brother, for real estate situate in the city of Lexington, on the ground of the want of sufficient mental capacity, at the time, on the part of decedent to make said deed; that said deeds were executed without

any consideration, and that they were procured to be made by the fraud and undue influence of the grantees in said deeds.

The court below sustained the deed to Robert Caldwell, and set aside the deed to appellants, the mother and sister of decedent, and they prosecute this appeal from that part of the judgment. Appellants insist that, as the deeds convey two distinct parcels or lots of ground to different parties, a joint suit could not be maintained, and the petition should have been dismissed because there was a misjoinder of the causes of action. That may be true; but Sec. 113, Civil Code, provides where that objection exists, the court may at any time before defense made on motion of defendants, strike out any cause or causes of action improperly joined; and Sec. 114, *Ib.,* provides that unless the objection is made as provided in Sec. 113, the error shall be deemed as waived.

The objection was not made in the court below, and the question cannot be raised in this court. The consideration for the conveyance from William to Betsey and Mary Caldwell recited in the deed, is that they furnished nearly or quite all the money with which to purchase the house and lot owned by him, etc., except that furnished by his brother, Robert Caldwell. The conveyances for the property, there being two, are dated March 7, 1862, and July 23, 1864, respectively; and it is shown by the evidence that to within two years before the death of Mrs. Caldwell, he was an industrious man of good habits and a good bricklayer, receiving high prices for his labor. Some of the witnesses speak of his having received as much as $5 or more *per diem* for work. He might very soon have paid for the property by his labor at the prices he was in the habit of receiving for it. When he made the purchases, the evidence does not show where appellants lived, or in what they were engaged.

Mr. Messick proves that he knew Betsey in 1836, and when he first knew her, he supposed she was worth some $500 or $600; about 1839 he says she loaned him $150; that he was a grocer; she traded with him and paid him promptly; he does not know when she removed to Lexington, when he first knew her she lived in the country, on a rented place; he did not know she was living in Lexington until four or five years before he testified, and he knew nothing of her owning any property since she removed to Lexington.

James Sellers proves he formed the acquaintance of appellants about the close of the war; that they then lived in the property in controversy, and he rented and lived in a part of the house three or four months; that the old woman rented out a part of the house,

and in that way got some support; he had known William Caldwell to give her money for marketing, and William bought Mary two dresses while he was there; he never knew either of them to work for wages, and he knew no source from which they derived an income except by the rent of the house.

Robert Caldwell's deposition was taken; he proves receipts were given by Scott for payments made on the property, and were all to William Caldwell except one for $240, which was to himself; that the receipts were all in the possession of Betsey Caldwell when this suit was commenced, except the one for $240. He fails to prove, and is not examined to the point, that his mother or sister had any money with which to pay any part of the purchase money, or labored to earn money.

Sykes proves that William Caldwell borrowed of him $300 to make a payment (perhaps the first) to Scott for the property, and he paid him the borrowed money with the interest. And Robinson, who is a subscribing witness to the deed to Robert Caldwell, proves he was present in the early part of the day when that deed was made, and heard Robert and William talking about the amount each had paid for the property, Robert contending that he had paid more than William, and the later denying it and insisting he had paid most; and it was finally agreed that Robert should pay the balance owing to Scott for the property. That argument having been made, the deed was executed to Robert. That took place in the house where appellants were, and it is not shown that either of them there claimed that they had paid any part of the purchase money.

In addition to all this proof of payments by William Caldwell at the time the deed was made to his mother and sister, he was with them and away from his wife. He was greatly enfeebled by disease in body and mind, and died within a very few days after he signed the deed; he was dependent on them for such nursing as he had, and was in a condition to be easily influenced and impelled to submit to the wishes and commands of his mother, and Mr. Gibbons's deposition strongly fortifies this conclusion. After stating that William Caldwell was in a very feeble and emaciated condition, he says soon after he went to the house the first time, his mother spoke up while he was talking to him, and said how she was going to have the deed made, but he silenced her, and told her that only he and her son must talk. He wrote both deeds; the one to Robert he wrote in the morning, and promised to return and write the other in the evening, and he was so low he was afraid he would die before he could return

in the evening. A deed made under such circumstances would be scrutinized, and must be regarded with the gravest caution. But when the consideration is expressed to be for having advanced all or nearly all of the purchase money to the vendor, and upon investigation it turns out that the grantees paid no part of the purchase money, and had none to advance, the deed under such circumstances cannot be sustained.

From all the evidence in the case we must conclude that William Caldwell paid the residue of the purchase price for the property not paid by Robert, and that the conveyance to appellants was without consideration. Wherefore the judgment is *affirmed.*

*Smith & Shelby, Z. Gibbons, for appellants.*
*Huston & Mulligan, for appellees.*